[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife brought this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable to this court August 24, 1993. She also seeks alimony, custody and support of the minor child, and other relief as on file. The defendant husband admitted the material allegations of the complaint and filed an amended cross complaint in which he also seeks a dissolution of the marriage on the ground of irretrievable breakdown. He further asks for custody and support of the minor child, alimony, and other relief as on file.
Both spouses testified and submitted financial affidavits and written proposed orders. A pension valuation expert also testified, and numerous documentary materials were introduced into evidence. At the outset of trial, the parties agreed on the record to joint legal custody of their minor child, Scott, his primary residence to be with mother and reasonable rights of visitation with father; that the wife would maintain health insurance for the child, and the parties would equally pay any unreimbursed health or medical expenses for the child; that she would cooperate in the defendant's remaining covered under wife's health insurance pursuant to COBRA and other applicable law at his expense; that he would convey title to the Talon motor vehicle to her; and that he would retain title to the Plymouth van, and she would sign over any interest she may have in it to him; and that state subsidy benefits received by mother for their adult foster son, Charles Cheng, would be turned over to Charles. They also stipulated that the fair market values of two CT Page 10875 jointly-owned parcels of real estate were as follows:
25 Tanglewood Drive, Norwich, CT $155,000
10 Clairmont Avenue, Norwich, CT $ 65,000
They further agreed that the Clairmont Avenue property, which is rented to a tenant, would continue to be held by them as tenants in common; that they would share in the net rental income and expenses equally; that they would jointly decide to sell or lease and the terms and conditions thereof; and that the defendant husband would be responsible for the management of the property and shall have day-to-day discretionary authority in respect thereof.
During oral argument, they advised the court that they were negotiating the distribution of their household furnishings and other tangible personal property and requested the court to retain jurisdiction if they were unable to agree on a satisfactory division of the personal property and with respect to the sale or continued leasing of the Clairmont Avenue property.
The issues the parties submitted to the court involved child support, alimony, and the assignment and distribution of the parties' assets.
Having heard the evidence, the court finds the facts as follows:
The plaintiff wife, whose birth name was Patricia K. Gallagher, married the defendant July 6, 1969, at Brentwood, New York. She has resided continuously in this state for more than one year prior to the date of the complaint. The parties have one minor child of the marriage, Scott Patterson, born July 3, 1982, who was adopted by them. No other minor children were born to the wife since the date of the marriage. The parties adopted one other child and have one foster son (Charles), both of whom have reached their majority. Neither party is a recipient of public assistance. All statutory stays have expired and the court has jurisdiction.
The wife is 46 years of age and holds a bachelor's and master's degree in speech pathology. She is in fair health; she has diabetes which she controls with diet and exercise and has CT Page 10876 suffered from bouts of depression, stress and anxiety for which she takes medication and participates in counseling. She is a `recovering' compulsive gambler. She was hospitalized several times in 1993 for stress and other causes for short periods; she has lost no time from work because of these problems in 1994. There is no showing that her physical or mental condition has impaired her ability to perform her job, apart from the time she lost during 1993. She has worked her entire career as a speech pathologist in the local school system and earns $1,038 per week gross, $684[1] per week net. She worked as a licensed real estate sales agent for several years in the 1980s, but no longer holds a current license.
The husband is 51 years of age and holds a two-year associate's degree in metallurgy. He is in good health. He worked for almost 20 years for United Nuclear Corporation (UNC) and its various divisions, until its local plants closed in 1992. Shortly after, he obtained a job with American White Cross which lasted for over one and one-half years, when the company moved his job out of state, and he was let go. He earned $37,000 when he began this employment, supervising assembly employees, and $39,000 at the end, as a process engineer. At UNC, he was a senior engineer earning $49,000 per year when that job ended. During the early years of marriage he supported the wife while she completed her third and fourth years of college and obtained her master's degree.
He has been unemployed since August, 1994, and receives as unemployment compensation benefits $317 per week gross, $281 per week net.[2] He is diligently searching for new employment and is confident about obtaining it.
This marriage of more than 25 years' duration ran into difficulties in the early 1980s when the wife had an affair with another man. The husband forgave her and the couple continued on. They were unable to have a biological child so they took in foster children at various times and adopted two of them. A third child they began to adopt died. All of the children, both foster and adopted, had `specialized needs', and the state provided subsidies. In the case of Scott, their minor son, the wife receives $136 per week.
The children were demanding of their time, efforts and emotions, and the parties were devoted to the children. They worked well as a team, complementing each other in caring for CT Page 10877 them. The marriage then received a grievous blow from the crib death of an infant who suddenly died a few days after he was brought home to them during the adoptive process.
The wife describes the husband as resorting to anger, verbally attacking her, incommunicative, and refusing to go anywhere, not even to a movie. He points to many vacation trips the parties took, both together and alone. Aside from the wife's gambling, they enjoyed a modest way of life.
There was no violence. The parties had separate lifestyles and pursuits. When he went to visit his family in New York state, she never went. The wife was an inveterate bingo player (for money), and when the local casino opened in 1992, she quickly developed into a compulsive gambler. She frittered away at least $30,000 of the parties' assets in gambling and a loan to an associate. The husband was dismayed by this and some of the unsavory gambling people she began associating with.
He initially agreed to work through the problems with her, and she agreed to stop and give him her credit cards. She began again, and that was the final death knell of this marriage. They separated in December, 1993, when the wife moved out of the jointly-owned home and into an apartment with their son, Scott, who stays with his father every weekend.
The marriage has irretrievably broken down, and on the evidence, I find that the wife must bear a greater burden of the responsibility and fault for its destruction.
The parties have accumulated the following assets (apart from their cars and tangible personal property) during the marriage:
 25 Tanglewood Drive, Norwich, CT, the jointly owned family dwelling, value $155,000, less mortgage of $24,539,[3]
leaving an equity of $130,461
 10 Clairmont Avenue, Norwich, CT, jointly owned rental dwelling, value $65,000, less mortgage of $38,000, leaving an equity of $ 27,000
The wife has IRA accounts totaling $ 18,541 CT Page 10878
and a teacher's retirement plan worth $ 12,889
She has cash on deposit in banks worth $ 4,500
 The husband has cash on deposit in banks worth $ 3,232
Jointly-owned state education bonds worth $ 11,376
His T. Rowe Price 401K plan worth $118,750
 and his UNC pension annuity I value at $ 25,000 -------- TOTAL: $351,749
The husband's annuity would provide him with $228 per month at age 55 or $325 per month at age 65, if at his option, he elected a straight life benefit; if he elected guaranteed year certain or survivor benefits, the monthly pay out would be slightly less. I find that the annuity is vested in him, and discounted the expert's valuation slightly to reflect the orders set forth below.
The bonds were purchased from funds the husband received as severance pay. The parties made two investments from the wife's retirement account and real estate earnings in the aggregate neighborhood of $11,000 to $25,000 which became worthless. The husband's 401K plan was acquired by deductions from his employment earnings and matching funds from his employment at UNC. It appreciated over the years.
Against these assets, they report these liabilities (apart from mortgages): wife, $23,129, of which about $20,000 is joint credit card debt; husband only includes $11,300 of this joint debt in his reported debt of $13,034, due to some uncertainty about whether one credit card account was joint of the $20,000 joint debt, most represents the wife's gambling losses. By pendente lite order, the husband was ordered to and did, since September, 1993, pay one-half of the monthly minimum payment toward the credit card liabilities; the wife paid the other half. Most of these payments were allocated to interest and slightly reduced the outstanding balances.
The couple's funds were commingled during the marriage, until their separation. Their first home was purchased with joint CT Page 10879 funds; it was sold at a profit, which was invested in the present family dwelling. The home mortgage was paid from family funds, as were all the household expenses. The mortgage and expenses on the rental property are paid from the rental income.
I conclude that the parties made approximately equal monetary and non-monetary contributions to the acquisition and appreciation in value of their marital assets, although in recent years the wife had greater earnings than he had. The husband's contributions to the preservation of the assets were greater than that of the wife, as a result of her gambling losses, which were significant.
There was insufficient evidence of the parties' annual earnings over the duration of the marriage to be able to determine their cumulative earnings.
The wife has superior employability, income and earning capacity than the husband. He may have greater vocational and occupational skills than she has, but with her health problems and gambling affliction, the court cannot conclude that either party has a better opportunity than the other to acquire capital assets and income in the future.
The court and counsel have recalculated the child support guideline amount and have agreed that the father's current child support obligation is $33 per week, rather than the $29 per week shown on the worksheet. I believe that the subsidy of $136 per week provided by the state must first be added to the combined net income available to the parties to determine their basic support obligation, and then subtracted from that obligation to determine their individual obligations.
The husband seeks an order that the family home be sold, that the proceeds be divided equally, and that the wife be ordered to pay the outstanding credit card liabilities from her share of the proceeds. The wife seeks to retain the home and live there with their son. Although the court appreciates the husband's desire to obtain funds to purchase or obtain new quarters for himself, the court also considers the capital gains tax liability which would be incurred by both parties upon a sale, and their minor son's need for some stability. Counsel advised the court that if the property were sold and either party were unable to defer his or her capital gains realization, such party would incur a federal and state tax liability of approximately $10,000. CT Page 10880
Further, the wife's financial affidavit reflects $42 per week in real estate taxes, which are in fact included in the modest home mortgage payments of $142 per week, which includes principal and interest on both mortgages, taxes and homeowner's insurance premiums. Therefore, her weekly expenses would be $580 per week, rather than the $622 per week reported. When the child support order is added into the equation, I calculate that she would have a net weekly surplus of total income over expenses equal to about $300[4] per week. This surplus cash flow is available to assist the husband in obtaining new quarters.
On balance, when considering all of these factors, I find it more appropriate that the husband vacate the home, and the wife reside there with their son, Scott, as set forth below. The maintenance of the home will also provide a sense of continuity and a `place to come home to' for their older children.
The husband waives any claims for alimony. The wife seeks $1 per year alimony until age 62 modifiable only if she is unable to work by reason of physical or mental disability. As the wife will have primary custodial responsibility of the minor child of the marriage, now age 12, I conclude that such an award is appropriate, at least until their son graduates high school or becomes 19,[5] whichever first occurs, in order to provide a safety net for mother and son. In any event, it must be borne in mind that alimony is based on the payor's ability to pay, should the wife, as she fears, becomes disabled.
The court has considered all of the evidence in the light of the criteria in General Statutes §§ 46b-81, 46b-82 and 46b-84
and the taxable implications and consequences of the financial awards set forth below.
Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown, together with the following orders:
(1) Joint legal custody of the minor child, Scott, is awarded to the parties; his primary residence shall be with mother and the father shall have reasonable rights of visitation. The parents shall participate in the parenting education program pursuant to 1993 Public Acts, No. 93-319.
(2) The mother shall maintain her job-related health insurance CT Page 10881 for the benefit of the minor child, and the parties shall equally share all unreimbursed or uncovered health expenses for the child. An order pursuant to General Statutes § 46b-84(c) shall enter. The plaintiff shall cooperate with defendant to enable him to remain covered under her insurance at his expense pursuant to applicable law.
(3) The father shall pay to the mother the sum of $33 per week as child support effective October 24, 1994,[6] secured by contingent wage execution. The child support is subject to 1994 Public Acts, No. 94-61(b). The husband shall promptly notify the wife upon regaining employment and of his income therefrom.
(4) The husband shall convey to the wife all his right, title and interest to the real estate at No. 25 Tanglewood Drive, Norwich, Connecticut, by quit claim deed, subject to the encumbrances thereon, which she shall assume and agree to pay. She shall simultaneously execute and deliver to him a note in the amount of $24,500 secured by a third mortgage on said premises. Said note and mortgage shall provide for interest at the rate of four (4%) percent per annum, equal monthly payments of $600 each commencing on the first of December, 1994, and monthly thereafter on the first of each month until paid; a 30-day default clause; provisions for acceleration if in default of any installment payment or provision of this mortgage or the prior mortgages; for attorney's fees and reasonable costs of collection; and the husband shall be named as loss payee on the homeowners' insurance policy. Said principal balance, if not sooner paid, shall be immediately due and payable on the sale or transfer of the home, the wife's death or remarriage, or pursuant to General Statutes § 46b-86(b), or with a `balloon payment' on or before January 1, 1998. The husband shall vacate the premises by November 15, 1994, and the pendente lite orders relating to the premises shall remain in effect until said date.
(5) The parties shall hold the premises at No. 10 Clairmont Avenue, Norwich, Connecticut, as tenants in common, share the net rental income, expenses and shortfall, if any, equally; they shall jointly decide whether to sell or lease the premises, and upon the terms and conditions thereof. Upon sale, the net proceeds shall be divided equally. The husband shall have day-to-day discretionary authority in regard to the management of the property and shall be responsible therefor. The court shall retain jurisdiction over this matter until December 31, 1995, for all purposes. CT Page 10882
(6) The husband shall pay to the wife the sum of $1 per year alimony until Scott's high school graduation or July 3, 2001, whichever first occurs; said alimony shall terminate upon the death of either party, the wife's remarriage, or pursuant to General Statutes § 46b-86(b). The alimony shall not be modifiable as to term and shall only be modifiable if the wife is unable to work as a result of any physical or mental disability.
(7) Each shall pay their own attorney's fees.
(8) The wife shall take, have and own the following property: her IRA accounts; pension and cash on hand in banks; and her 1990 Talon automobile.
(9) The husband shall take, have and own the following property: his 1985 Plymouth van; his personal items; his 401K plan; the jointly-owned state bonds; his cash on hand in banks; and his Metropolitan life annuity, subject to Qualified Domestic Relations Order (QDRO), he shall select the 75 percent joint and survivor spouse option in favor of the wife, and she shall be irrevocably designated thereon as survivor beneficiary. The court shall retain jurisdiction over this matter until the QDRO is accepted by the pension plan administrator.
(10) The wife shall turn over all state subsidy payments received on behalf of the parties' foster son, Charles, to Charles forthwith upon receipt thereof.
(11) The wife shall pay all of the liabilities shown on Schedule 3 of her October 19, 1994, financial affidavit and save the husband harmless. The husband shall contribute the sum of $1,250 toward those obligations within sixty (60) days hereof.
(12) The other tangible personal property of the parties shall be equitably divided between the parties. If they are unable to do so within ninety (90) days the court shall retain jurisdiction thereof and hold a hearing thereon, which shall be requested within said ninety days.
(13) For income tax purposes, real estate tax payments on the family home made by them in 1994 are allocated to them equally; the mortgage interest payments on said home up to and including the November, 1994, payment are allocated to the husband; the dependency exemption for Scott is allocated to the wife for 1994; CT Page 10883 thereafter, the husband shall have the exemption in alternating years in which he has gross income in excess of $27,500.
(14) All documents of title and other instruments necessary or incidental to effectuate the orders herein shall be executed and delivered within thirty (30) days hereof.
Teller, J.